## THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| _____ )<br>ST. CROIX RENAISSANCE GROUP, LLLP, )<br>BROWNFIELD RECOVERY CORP. and ENERGY )<br>ANSWERS CORPORATION OF PUERTO RICO )<br> )<br>Plaintiffs, )<br> )<br>vs. )<br> )<br>ST. CROIX ALUMINA, LLC and ALCOA WORLD )<br>ALUMINA, LLC, )<br>Defendants. )<br>_____ ) | CIVIL NO. 2004/67<br><br>ACTION FOR BREACH<br>OF CONTRACT,<br>MISREPRESENTATION<br>and NEGLIGENCE |

## ST. CROIX ALUMINA, LLC'S AND ALCOA WORLD ALUMINA, LLC'S
## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Simone R.D. Francis
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, LLC
The Tunick Building
1336 Beltjen Road, Suite 201
St. Thomas, Virgin Islands 00802
Telephone: (340) 714-1235
Facsimile: (340) 714-1245

Charles A. Gall
HUNTON & WILLIAMS LLP
Fountain Place
1445 Ross Avenue
Suite 3700
Dallas, Texas  75202-2799
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

Cassandra C. Collins
Dan J. Jordanger
HUNTON & WILLIAMS LLP
Riverfront Plaza-East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Attorneys for Defendants

November 20, 2009

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ............................................................................ 1

II.    ARGUMENT.................................................................................................... 2

    A.    PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED. ............................. 2

        1.    Virgin Islands Law Controls Plaintiffs' Tort Claims................................ 2

        2.    The Gist of the Action Doctrine Bars Plaintiffs' Fraud In the Inducement Claim. ................................................................................. 3

        3.    Even if Delaware Law Applies, Plaintiffs' Fraud Claims Should Be Dismissed. ............................................................................................. 5

        4.    Conclusion. ........................................................................................... 6

    B.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF WARRANTY CLAIM. ......................................... 6

        1.    The Proper Construction of the PSA. ...................................................... 6

        2.    The Limited Warranty of § 8.1.6. ........................................................... 7

            a.    The Alleged "Historical Events" Warranty ................................... 9

            b.    The Alleged Warranty "Regarding Details of Disclosed Issues" ... 9

            c.    The Alleged "Permit" Warranty ................................................. 10

        3.    § 8.1.4 Provides Plaintiffs No Relief. .................................................... 11

    C.    DEFENDANTS DID NOT BREACH THE LETTER AMENDMENT.............. 12

    D.    PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF.................... 13

    E.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW. ....... 15

III.    CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 9, 15

*Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589
 (E.D. Pa. 1999) ........................................................................................................1, 2, 3

*Jiffy Lube International, Inc. v. Jiffy Lube of Penn., Inc.*, 848 F. Supp. 569
 (E.D. Pa. 1994) ............................................................................................................... 2

*Krock v. Lipsay*, 97 F.3d 640 (2nd Cir. 1996) ............................................................................ 2

*New York Life Insurance Co. v. Viglas*, 297 U.S. 672 (1936) .................................................. 14

*Padalino, et al. v. Standard Fire Insurance Co.*, 616 F. Supp. 2d 538 (E.D. Pa. 2008)........... 3, 4

*In re Sugarhouse Realty, Inc.*, 192 B.R. 355 (E.D. Pa. 1996) ................................................. 7, 10

*S.C. Johnson & Son v. Dowbrands, Inc.*, 111 Fed. Appx. 100 (3d Cir. 2004) ............................ 9

## STATE CASES

*Abry Partners V L.P. v. F. & W. Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006) ..........6, 13, 14

*Addie v. Kjaer*, 2009 WL 453352 (D. V.I., Feb. 23, 2009) ..................................................... 1, 3

*Bennington Foods, L.L.C. v. St. Croix  Renaissance Group, L.L.P.*, 2009 WL 2950490
 (D. V.I. Sept. 8, 2009) ................................................................................................. 4

*Brown v. SAP America, Inc.*, 1999 WL 803888 (D. Del. Sept. 13, 1999).................................... 2

*Cerberus International, Ltd. v. Apollo Management L.P.*, 794 A.2d 1141 (Del. 2002) .............. 13

*Citisteel USA, Inc. v. Connell Ltd. Partnership*, 758 A.2d 928 (Del. 2000) .............................. 14

*Eastern States Petroleum Co. v. Universal Oil Products*, 49 A.2d 612 (Del. Ch. 1946)............. 13

*First United Bank & Trust v. PNC Financial Services Group, Inc.*,
 2009 WL 3447284 (M.D. Pa. Oct. 21, 2009)................................................................... 5

*Freedom Properties, L.P. v. Lansdale Warehouse Co.*, 2007 WL 2254422
 (E.D. Pa. Aug. 2, 2007)............................................................................................... 4, 5

*Holly Hill Holdings v. Lowman*, 628 A.2d 1298 (Conn. 1993) ................................................. 10

*McKenna v. The Terminex International Co.*, 2006 WL 1229674
 (Del. Super. Mar. 13, 2006)............................................................................................ 5

*Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co., Inc.*,
    2005 WL 445710 (Del. Super. Feb. 23, 2005) .................................................................. 5

*O'Brien v. Progressive Northern Insurance Co.*, 785 A.2d 281 (Del. 2001) ............................ 6, 7

*Omar Oil & Gas Co. v. MacKenzie Oil Co.*, 138 A. 392 (Del. 1926) ........................................ 9

*Pami-Lemb I Inc., et al. v. EMB-NHC, L.L.C.*, 857 A.2d 998 (Del. Ch. 2004) ......................... 14

*Pinkert v. Olivieri*, 2001 WL 641737 (D. Del. May 24, 2001) ................................................. 5, 6

*Sullivan v. Chartwell Investment Partners, L.P.*, 873 A.2d 710 (Pa. Super. Ct. 2005) ................ 4

*The Knit Witt v. Knitting Fever, Inc.*, 2009 WL 3427054 (E.D. Pa. Oct. 20, 2009) ..................... 5

*Tristate Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886
    (Del. Ch. Apr. 15, 2004) ................................................................................................. 5

*Washington v. Hovensa, L.L.C.*, 2008 WL 2697332 (D. V.I. July 3, 2008) .............................. 15

## FEDERAL STATUTES

Fed. R. Civ. P. 56(e) ................................................................................................................. 9

# I.    PRELIMINARY STATEMENT[1]

Plaintiffs' concession that their fraud in the inducement claim is based entirely on representations in the PSA dooms that claim unless this Court is willing to ignore *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999),[2] as well as other cases reaching the same result and this Court's recent decision in *Addie v. Kjaer*, 2009 WL 453352 at *4 (D. V.I., Feb. 23, 2009).  As demonstrated below, those cases involve virtually identical factual situations and mandate dismissal of Plaintiffs' fraud claim.

Summary judgment on Plaintiffs' breach of contract claim is also appropriate unless the Court is willing to rewrite the PSA.  In the context of a contract where Plaintiffs acquired the Property in its "AS IS, WHERE IS condition, WITH ALL FAULTS" for a fraction of its original cost, the language of the PSA cannot be given the expansive interpretation Plaintiffs seek.  Plaintiffs got exactly what they bargained for at the bargain basement price of $11 million -- a property with known environmental conditions for which Plaintiffs agreed to assume the risk.

Plaintiffs' effort to reform or partially rescind the PSA is equally futile.  In essence, Plaintiffs again ask this Court to rewrite the parties' agreement to allow them to keep the Property but avoid their obligations under the PSA.  The law simply does not afford Plaintiffs the relief that they seek.

Moreover, while Plaintiffs have exhausted much effort in crafting Plaintiffs' Disputes As to Defendants' Statement of Undisputed Facts and Statement of Facts in Dispute ("Plaintiffs' Facts"),[3] this effort is wasted because Defendants' motion presents three distinct legal issues:  (i)

---

[1] Defendants use herein the same terms as defined in their Statement of Undisputed Facts ("SUF") and Brief in Support of Motion for Summary Judgment ("Defendants' Opening Brief").

[2] The Honorable Harvey Bartle, III decided *Coram*.

[3] Because Plaintiffs' Facts do not impact the disposition of Defendants' motion for summary judgment, Defendants have not undertaken here to refute each of those asserted facts.  Defendants, however, do not agree with those facts and if this case proceeds, Defendants will demonstrate the multiple and material inaccuracies in Plaintiffs' Facts.

the application of the gist of the action doctrine to Plaintiffs' tort claims; (ii) the interpretation of

an unambiguous contract; and (iii) the legal unavailability of Plaintiffs' requested equitable

remedies on these facts.  Simply put, the law and the plain language of the PSA dooms Plaintiffs'

claims.  Summary judgment, therefore, in Defendants' favor is appropriate on all counts.

## II.   ARGUMENT

### A.   PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED.

#### 1.   Virgin Islands Law Controls Plaintiffs' Tort Claims.

The laws of the Virgin Islands control Plaintiffs' tort claims.  *Coram*, 94 F. Supp. 2d at

593.  The court's reasoning in *Coram* shows that Plaintiffs' reliance on § 201 of the Restatement

(Second) Conflict of Laws ("Restatement of Conflicts") to support their assertion that Delaware

law applies to their tort claims is misplaced.  Section 201 simply directs the Court to § 187 of the

Restatement of Conflicts.[4]  Faced with a choice of law provision virtually identical to the one

found here,[5] the *Coram* court applied § 187 of the Restatement of Conflicts and held that the

contractual choice of law would not govern fraudulent inducement claims.  *Coram* mandates the

same result in this case.[6]

Here, the PSA states that "[t]his Agreement shall be construed under the laws of the State

of Delaware, excluding those relating to conflicts or choice of law."  PSA ¶ 19, Ex. S (emphasis

---

[4] Section 201 provides: "The effect of misrepresentation, duress, undue influence and mistake upon a contract is determined by the law selected by application of the rules of §§ 187-188."

[5] The agreement in *Coram* provided, "This Agreement shall be governed by the laws of the State of Delaware."

[6] Plaintiffs fail to address *Coram*, despite its unmistakable relevance.  The reason is obvious:  Plaintiffs have no answer.  Instead, Plaintiffs cite a Delaware case that stands alone and has no applicability in a conflict of laws analysis in a Virgin Islands District Court.  *Coram* is consistent with decisions of other jurisdictions -- including Delaware.  *See, e.g., Krock v. Lipsay*, 97 F.3d 640, 645 (2nd Cir. 1996) (holding that the provision that the contract would be "governed by and construed" under Massachusetts law, was not "sufficiently broad" to apply to fraudulent misrepresentation claims); *Brown v. SAP America, Inc.*, 1999 WL 803888 at *4-5 (D. Del. Sept. 13, 1999) (rejecting the argument that § 201 mandates application of the parties' choice of law and applying the "most significant relationship test" to the tort claims); *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Penn., Inc.*, 848 F.Supp. 569, 576 (E.D. Pa. 1994) (holding that the choice of law provision similar to the clause in this case would apply only to construction, interpretation, and enforcement, not tort claims because it did not embrace "all aspects of the legal relationship").

added).  In *Coram*, this Court determined that such a provision controlled "only claims relating to the construction and interpretation of the contract."  *Coram,* 94 F. Supp. 2d at 593.  As recognized in *Coram*, the intent of the parties as expressed in their agreement controls and a narrow choice of law provision is intended to govern only the "rights and duties under the contract itself."  *Id.*

Because the parties chose not to "provide more broadly that [the choice of] law would apply to tortious conduct that led up to the execution of the contract," (*id.*), the choice of law provision does not apply to Plaintiffs' fraud in the inducement claim, and the Court must turn to Restatement of Conflicts § 148, which applies to misrepresentation torts.[7]  The contacts with the Virgin Islands are legion, and Plaintiffs advance no argument that another state has a more compelling relationship to this transaction.  Thus, under the Restatement of Conflicts and the reasoning of *Coram*, the laws of the Virgin Islands govern Plaintiffs' fraud claim.

**2.      The Gist of the Action Doctrine Bars Plaintiffs' Fraud In the Inducement Claim.**

In their Opposition, Plaintiffs concede that they rely only on the contractual representations in the PSA as a basis for their fraudulent inducement claim.  Plaintiffs' Mem. at 15 n.17.  Plaintiffs' concession is fatal to their fraud claim because Virgin Islands law mandates application of the gist of the action doctrine to bar a fraudulent inducement claim where the allegedly fraudulent misrepresentations are written into the parties' contract. *Addie*, 2009 WL 453352 at *4.

Applying Virgin Islands law, the *Addie* court distinguished the case upon which Plaintiffs principally rely -- *Padalino, et al. v. Standard Fire Ins. Co*., 616 F. Supp. 2d 538, 542 (E.D. Pa. 2008) -- and found that "'promises made to induce a party to enter into a contract *that eventually*

---

[7] Section 148(1) provides that "when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties" unless another state has a more significant relationship with "the occurrence and the parties."

*become part of the contract* itself cannot be the basis for a fraud-in-the inducement claim under the gist of the action doctrine,'" *Id.* (quoting *Freedom Props., L.P. v. Lansdale Warehouse Co.*, 2007 WL 2254422 (E.D. Pa. Aug. 3, 2007)) (emphasis added by *Addie* court) (other citations omitted).  This holding controls the result here because Plaintiffs concede that the representations upon which they rely are part of the PSA.

Application of the gist of the action doctrine to dispose of Plaintiffs' fraud claim is particularly appropriate given that SCRG, one of the Plaintiffs in this action, successfully relied on that doctrine in its recent defense of a fraud claim.  *Bennington Foods, L.L.C. v. St. Croix Renaissance Group, L.L.P.*, 2009 WL 2950490 at *10-11 (D. V.I. Sept. 8, 2009); SCRG's Memorandum in *Bennington* at 8 n.3.[8]   In *Bennington*, this court dismissed fraudulent inducement and negligent misrepresentation claims against SCRG because the contract in question specifically addressed the subject matter of the alleged misrepresentations, holding that the plaintiff's remedy was "for breach of contract not fraudulent inducement to enter into to a contract."  *Id.*   Here, the case for application of the gist of the action doctrine is even more compelling than in *Bennington*, because the subject matter of the alleged representations is not merely addressed in the contract; the representations *themselves* are in the contract.

Plaintiffs cite nothing that supports their claim that the gist of the action doctrine permits fraud in the inducement claims based purely on representations written into the contract.  Instead, Plaintiffs rely upon Pennsylvania law that does not address situations in which the precontractual representations were later woven into the contract itself.  *See Padalino*, 616 F. Supp. 2d at 550 (applying Pennsylvania law and holding that the gist of the action doctrine did not preclude plaintiff's fraudulent inducement claims based on extra-contractual representations); *Sullivan v. Chartwell Investment Partners, L.P.*, 873 A.2d 710, 718 (Pa. Super. Ct. 2005) (same).

---

[8] A copy of SCRG's Memorandum in *Bennington* is attached as Ex. A.

Moreover, Plaintiffs ignore that more recent cases applying Pennsylvania law have held that the gist of the action doctrine will bar fraudulent inducement claims based on representations that are incorporated into the contract between the parties. *The Knit Witt v. Knitting Fever, Inc.*, 2009 WL 3427054 at *10 (E.D. Pa. Oct. 20, 2009) (because the seller's representation was the "bottom line" of an oral agreement, the buyer's claims were barred by the gist of the action doctrine); *First United Bank & Trust v. PNC Financial Services Group, Inc.*, 2009 WL 3447284 at *3-4 (M.D. Pa. Oct. 21, 2009) (fraudulent inducement claims based on precontractual representations that were later incorporated into the agreement were barred under the gist of the action doctrine); *Freedom Properties, L.P. v. Lansdale Warehouse Co. Inc.*, 2007 WL 2254422 at *6 (E.D. Pa. Aug. 2, 2007) (applying the gist of the action doctrine to bar a fraudulent inducement claim based on a precontractual promise included in the lease agreement).

### 3.     Even if Delaware Law Applies, Plaintiffs' Fraud Claims Should Be Dismissed.

Plaintiffs also ignore that Delaware courts applying principles akin to the gist of the action doctrine consistently affirm that no independent tort action will lie when the alleged tortious conduct arises out of or is inextricably related to the contract. *See, e.g.*, *McKenna v. The Terminex Int'l Co.*, 2006 WL 1229674 at *3 (Del. Super. Mar. 13, 2006) (dismissing a negligence claim because the complaint did not assert that the defendants had breached a duty independent of their contractual obligations); *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co., Inc.*, 2005 WL 445710 at *3 (Del. Super. Feb. 23, 2005) ("where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not tort"); *Tristate Courier and Carriage, Inc. v. Berryman*, 2004 WL 835886 at *11 (Del. Ch. Apr. 15, 2004) (dismissing a fraud claim because a breach of contract claim "cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced'"); *Pinkert v. Olivieri*, 2001 WL

641737 at *5 (D. Del. May 24, 2001) (misrepresentations that had been memorialized in the contract cannot form the basis of an independent fraud in the inducement claim).

Finally, Plaintiffs' reliance on *Abry Partners V, L.P. v. F. & W. Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006), is misplaced.  The *Abry* court held that Delaware public policy would not permit a seller to insulate itself from the possibility that a sale would be rescinded if the buyer could show that the seller had intentionally misrepresented the facts on which the parties had based the contract.  *Id.* at 1036.  The *Abry* court did not address the issue presented to this Court of whether a plaintiff can turn a breach of contract claim into a fraud claim.  Other Delaware courts have specifically addressed this issue and resoundingly concluded that a plaintiff cannot.  *See, e.g., Pinkert*, 2001 WL 641737 at *5.

### 4. Conclusion.

The gist of the action doctrine under Virgin Islands law and similar concepts under Delaware and Pennsylvania law mandate dismissal of Plaintiffs' fraudulent inducement claim because Plaintiffs concede that such claim is premised solely on the representations in the PSA's warranty provisions and "nothing else -- nothing outside of the agreement."  Plaintiffs' Mem. at 15 n.17.  As a result, Plaintiffs' remedy, if any, is for breach of contract, and Defendants are entitled to summary judgment on Plaintiffs' Count I.

## B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF WARRANTY CLAIM.

### 1. The Proper Construction of the PSA.

To construe the limited warranty provided to Plaintiffs in the PSA, Court must consider the language of warranties in § 8.1 in light of the entirety of the parties' agreement and its context.  *See, e.g., O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 287 (Del. 2001).  Although Plaintiffs largely ignore it, it is undisputed that Plaintiffs purchased the Property "in its 'AS IS, WHERE IS' condition, WITH ALL FAULTS, without representation, warranty or

guaranty of any kind or nature, except to the extent specifically provided in Section 8.1 . . ." PSA § 6.1, SUF ¶ 59, Exhibit S (emphasis in original).  It is well settled that "'the presence of the 'AS IS' clause weighs in favor of narrowly construing the express warranties in the Agreement of Sale.'"  *In re Sugarhouse Realty, Inc*., 192 B.R. 355, 371 (E.D. Pa. 1996) (citation omitted).

Further context for the interpretation of the PSA is provided by the fact that Plaintiffs -- who are in the business of remediating environmentally challenged properties -- assumed the responsibility for remediating the Property, and acquired it for a fraction of its original cost to Defendants.[9]   The basis for the significantly discounted price was Plaintiffs' agreement to buy the Property "WITH ALL FAULTS" -- *i.e.* with all existing environmental conditions -- with only the very limited exceptions identified in § 8.1 of the PSA.   Plaintiffs' distorted interpretation of the PSA would turn the parties' deal completely on its head, would effectively strike the language "AS IS, WHERE IS condition, WITH ALL FAULTS" from the PSA and would require that the very limited warranties provided in § 8.1 be construed as a broad-based warranty of the Property's environmental history.   Simple rules of contract construction defeat Plaintiffs' argument because those rules require that each part of the parties' agreement be given meaning.  *See, e.g., O'Brien*, 785 A.2d at 287 (recognizing the well established rule in Delaware that a court should interpret a contract in such a manner as to give effect to each term of the agreement and not in a manner that would render any provision illusory or meaningless).

## 2.   <u>The Limited Warranty of § 8.1.6.</u>

The proper construction of § 8.1.6 requires the Court to determine, in light of the context set forth above, both what was warranted and what was excluded from that warranty.   Section 8.1.6 narrowly provides -- except as disclosed on Exhibit 8.1.6 or in the Environmental Reports -

---

[9] It is undisputed that Plaintiffs purchased the Property for $11,000,000, only seven years after Defendants acquired it for $60,000,000.  *See* SUF ¶¶ 9, 58.

- that (1) Defendants had "received no written notice of any **pending violation** or **alleged violation** of . . . [Environmental Law]" and (2) "to [Defendants'] knowledge there **are no such violations outstanding** . . ."  PSA § 8.1.6, SUF ¶ 64 (emphasis added).  Plaintiffs, however, attempt to transform this language into a broad warranty that (a) all historical environmental events have been disclosed (*i.e.*, alleged past releases of red mud), (b) every detail of an existing, disclosed environmental problem was also disclosed; and (c) all work ever performed on the Property was done in compliance with applicable permits.  This is simply not what § 8.1.6 says, particularly in the context of the parties' overall agreement and relationship.

The most obvious flaw in Plaintiffs' argument is that that they give no meaning to the word "such" in the last clause of § 8.1.6.   While Plaintiffs would prefer to transform the last clause of §  8.1.6 into a broad new warranty, in context "such violations" can only refer to a "pending violation or [an] alleged violation."   Thus, in § 8.1.6., Defendant SCA warranted only that it had not received written notice of a pending or alleged violation of Environmental Law and that to SCA's knowledge no pending or alleged violation was outstanding other than those disclosed.  As discussed in detail in Defendants' opening brief, the plain meaning of the words employed in § 8.1.6  ("are," "pending," "alleged," and "outstanding") can lead only to one interpretation of that section -- the limited scope of Defendants' warranty was to unresolved but asserted violations of Environmental Law not specifically disclosed.  Importantly, Plaintiffs make no substantive reply to these arguments.

In any event, the matters about which Plaintiffs now complain were either excluded by their disclosure in Exhibit 8.1.1 and/or the Environmental Reports or, as it relates to the issue of a permit, were verbally disclosed to Plaintiffs and thus cannot serve as a basis for their claim.[10]

---

[10]Although not listed in Exhibit 8.1.6 or discussed in the Environmental Reports, Plaintiffs cannot dispute that they were told that Defendants did not have the permit in question.  *See*  SUF ¶ 51.  In Plaintiffs' Facts, Plaintiffs state that the testimony showing Plaintiffs' knowledge is taken "out of context" and then refer to ¶ ¶ 32-41 of Plaintiffs' Facts.  Those paragraphs, however, do not challenge or dispute what Plaintiffs were told about the permit by Dr. Black.  Because Plaintiffs knew that there was no permit, they cannot show that they relied on any

8

In Exhibit 8.1.6, Defendants disclosed, and therefore excepted from § 8.1.6's warranty, the following: (1) Black's April 17 Letter, which identifies the Red Mud Release; (2) the April 18, 2002 letter, which identifies elevated pH in the Alucroix Channel; and (3) Black's May 22, 2002 letter, which identifies a seep of elevated pH in the Alucroix Channel. These are the only matters that can be construed to be "pending or alleged" violations of Environmental Law at the time of Closing. Since Defendants disclosed these issues, they are excluded from the limited warranty in § 8.1.6, and the burden was on Plaintiffs to investigate them.

       a.    <u>The Alleged "Historical Events" Warranty</u>. Plaintiffs argue that the scope of the limited warranty in § 8.1.6 covers historical events at the current red mud disposal area, asserting that Defendants warranted that there was only one release of red mud from the current red mud disposal area. Such a reading is simply not possible in light of the plain language of the warranty, which limits the warranty to a "pending violation or alleged violation" of which SCA had written notice or knowledge.[11]  Moreover, it is undisputed that no regulatory authority had asserted any pending or alleged violation of any permit related to the red mud disposal area at the time of Closing.

       b.    <u>The Alleged Warranty "Regarding Details of Disclosed Issues"</u>. With respect to elevated pH in the Alucroix Channel, there undisputedly was an asserted violation of Environmental Law set forth in the April 18 Order. Plaintiffs do not dispute that Defendants

---

alleged warranty that there was such a permit.  A buyer whose investigation has "fully acquaint[ed] him with the essential facts" cannot claim to have relied on warranties, even if the buyer believes that the warranty was misleading.  *S.C. Johnson & Son v. Dowbrands, Inc.*, 111 Fed. Appx. 100, 107 (3d Cir. 2004) (citing *Omar Oil & Gas Co. v. MacKenzie Oil Co.*, 138 A. 392, 397 (Del. 1926)).

    [11] At p. 21 of their Opposition Brief, Plaintiffs assert that there had been multiple discharges of red mud over the history of the Property that constituted violations of federal and local law.  Plaintiffs, however, do not identify the law that they claim was violated, which they must do in response to a motion for summary judgment. *See* Fed. R. Civ. P. 56(e) (A party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (noting the need for "significant probative evidence tending to support the complaint" in order to survive summary judgment) (citation omitted).  Further, if this case proceeds, the evidence will show that the only release of red mud that ever reached the Caribbean Sea was the release that was discovered in April 2002 and disclosed as an exception to Defendants' warranty in Exhibit 8.1.6.

disclosed the April 18 Order and Black's May 22, 2002 Letter, which disclosed additional elevated pH seeps that were reported to the DPNR pursuant to the April 18 Order. Nevertheless, Plaintiffs complain that Defendants' disclosure was not sufficient because they did not provide Plaintiffs with a draft report prepared by NRCI related to the elevated pH and an inspection of conditions of the Alucroix Channel.

Notably, however, Defendants undertook no obligation to disclose the extent of the violations or the status of any related investigations. The court in *Sugarhouse* examined similar warranty provisions in the context of an "as is, where is" agreement and found that the failure to disclose the quantity of an otherwise disclosed hazardous material was not a breach. 192 B.R. at 371. The reason for this is obvious -- one who buys property on an "as is, where is" basis has the burden to investigate the property to its satisfaction, particularly as to matters of which it becomes aware. *See also Holly Hill Holdings v. Lowman* 628 A.2d 1298, 1303 (Conn. 1993) (holding that an "as is" clause shifts the burden of understanding the extent of the hazard to the buyer). The key here is that existence of the pending violation related to the elevated pH was disclosed to Plaintiffs. As discussed, such disclosure excluded this matter from the warranty; however, in any event, the language of the PSA cannot be construed as a warranty that all information in the possession of Defendants regarding the alleged violation was disclosed. Instead, in the context of an AS IS, WHERE AS, WITH ALL FAULTS agreement, the burden was on Plaintiffs to investigate matters disclosed to their satisfaction.[12]

c.   The Alleged "Permit" Warranty. Plaintiffs' distorted reading of § 8.1.6 is also evident in their discussion of the permit related to Cell 7. In that section, Plaintiffs' state that "Alcoa's warranty that there were no outstanding environmental violations would include a

---

[12] In addition, Plaintiffs have attempted to paint the NRCI report as related to a wholly separate violation of environmental law. It is clear in reading the NRCI report that it relates to the extent -- not the existence -- of the previously disclosed pH incident.

representation that there were no environmental violations of this permit, as a CZM permit

violation of environmental requirements is a violation of the 'Environmental Law' as defined by

§ 8.1.6." Opp. Mem. at 29.  However, Defendants did not warrant that all work had been done in

compliance with permits.  Rather, Defendants warranted only that (i) other than as disclosed in

Exhibit 8.1.6 or the Environmental Reports, they had received no written notice of a "pending"

or "alleged" violation of Environmental Law and (ii) to Defendants' knowledge no such

"pending" or "alleged" violation of Environmental Law was outstanding except as disclosed in

Exhibit 8.1.6 and the Environmental Reports.  At the time of closing, there were no "pending" or

"alleged" violations of any CZM permit.

### 3.   § 8.1.4 Provides Plaintiffs No Relief.

Finally, Plaintiffs concoct a new breach of warranty theory, relying upon § 8.1.4.[13]  In so

doing, Plaintiffs fail to provide the Court with the entire text of § 8.1.4.  That section provides:

> [SCA] has made available to [Plaintiffs] copies of the
> Environmental Due Diligence Assessment for St. Croix Alumina,
> St. Croix, U.S. Virgin Islands entitled "Final Report to Alcoa
> Corporation, Pittsburgh, Pennsylvania, USA," dated August, 2001
> and prepared by Arthur D. Little, Inc., Acorn Park, Cambridge,
> Massachusetts 02140 - Reference: 74913 and the Geraghty &
> Miller, Inc. Site Assessment Report for the subject property and
> dated November, 1995 (collectively the "Environmental Reports").
> To [SCA's] knowledge, there are no hazardous material on the
> Property which violate any current applicable Federal, state or local
> environmental laws or regulations, ***except as disclosed in Exhibit
> 8.1.4 attached hereto and made a part hereof, or in the
> Environmental Reports.***

PSA, § 8.1.4 (emphasis added).  Plaintiffs inexplicably ignore the language in § 8.1.4 that

excludes matters identified in the Environmental Reports.

---

[13] In the Second Amended Complaint, Plaintiffs broadly reference breach of the "warranties set forth in Section 8.1" (Second Amended Complaint, ¶ 21), but any fair reading shows that Plaintiffs allege violations of § 8.1.6, not § 8.1.4.  For example, the list of alleged violations in ¶ 34 of the Second Amended Complaint makes no mention of alleged undisclosed hazardous material under the old red mud ponds.

Those reports undeniably disclose the conditions that Plaintiffs now claim constitute a violation of § 8.1.4. Area B is the old red mud ponds.[14] The Environmental Reports, and in particular the G&M Report, is replete with information concerning potentially hazardous materials in the groundwater under and near those ponds. As set forth in detail in ¶ 43 of Defendants' Statement of Undisputed Facts, which Plaintiffs have not disputed, these reports show that the wells in the vicinity of the old red mud ponds exceeded standards for pH, chloride, fluoride, TDS, sulfate, aluminum, arsenic, molybdenum and selenium. SUF ¶ 43(c) & (d). The G&M Report further states that "data reliably indicate that these constituents are a signature of impacts to groundwater quality resulting from red mud disposal." SUF ¶ 43(d). It is incredible that Plaintiffs now point to § 8.1.4 to support their alleged breach of warranty claim when the groundwater conditions and the potentially hazardous materials related to the old red mud disposal area so clearly are addressed in the Environmental Reports and therefore excepted from the warranty in § 8.1.4.

## C.   DEFENDANTS DID NOT BREACH THE LETTER AMENDMENT.

Plaintiffs defend their assertion that Defendants have breached the Letter Amendment of June 13, 2003 by arguing that DPNR "has (rather emphatically) told Alcoa that this work remains unfinished." Plaintiffs' Mem. at 29. This is, of course, irrelevant. Defendants expressly reserved the right in the Letter Amendment, in Defendants' sole discretion, to challenge any of DPNR's actions or findings. SUF ¶ 71. Defendants' actions in challenging DPNR's position, therefore, can only be construed as an assertion of their rights expressly granted in the PSA and cannot constitute repudiation or breach.

---

[14] Though Plaintiffs introduce confusion by calling the area at issue "Area B," they do not dispute that this area is the location of the old red mud ponds. *See* ¶ 101 of Plaintiffs' Disputes As To Defendants' Statement of Undisputed Facts and Statement of Facts in Dispute.

**D.**     **PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF.**

The law does not allow Plaintiffs to retain the Property with all of its economic benefit, without providing the primary consideration it contracted to provide -- environmental remediation of the Property. Whether Plaintiffs call it reformation, rescission, or "relief from performance," the unfairness of the result they seek is obvious; as a result, courts have uniformly rejected such misguided efforts.

First, reformation clearly is not available in this case because Plaintiffs do not seek reformation in their Second Amended Complaint or explain in their Opposition why they are entitled to it. Moreover, reformation is appropriate only when a contract requires correction "in order to express the 'real agreement' of the parties involved." *Cerberus Int'l, Ltd. v. Apollo Mgmt. L.P.*, 794 A.2d 1141, 1151-52 (Del. 2002). Here, Plaintiffs admit that the PSA *is* the proper agreement between the parties but claim that Defendants induced acceptance of its terms by fraud and breached the agreement. Breach of warranty and fraud in the inducement are not grounds for reformation. *See* 27 Williston on Contracts § 69:55 ("if the contract agreed upon is embodied in the writing, the fact that the agreement was induced by fraud is not ground for reformation").

Second, partial rescission is not available to Plaintiffs, as "[e]ven a defrauded complainant cannot accept the benefits received under a contract on the one hand and shirk its disadvantages on the other." *Eastern States Petroleum Co. v. Universal Oil Products*, 49 A.2d 612, 616 (Del. Ch. 1946). In *Eastern States*, the court stated that the goal of rescission was to return the parties to their precontract status quo, and held that the plaintiff "cannot cause the rescission of a contract in part and its approval in part, as self interest may dictate." *Id*. In this regard, Plaintiffs misstate *Abry*, arguing that it supports their assertion that they are entitled to partial rescission. Opp. Mem. at 30–31. *Abry* does not address "partial rescission." The plaintiff in *Abry* sought *full* rescission of the contract, and the court simply held that such relief

could be afforded on a showing of intentional fraud.  891 A.2d at 1034.  Plaintiffs do not seek full rescission of the PSA.[15]

Further, Defendants have not "repudiated" the contract, as Plaintiffs claim.  "[R]epudiation is an outright refusal by a party to perform a contract or its conditions entitling 'the other contracting party to treat the contract as rescinded.'"  *Citisteel USA, Inc. v. Connell Ltd. Partnership*, 758 A.2d 928, 931 (Del. 2000) (citation omitted).  When the conduct alleged to be a repudiation involves one party's interpretation of their rights or duties pursuant to a contract, repudiation *only* occurs "when a party is 'not asserting a good faith interpretation of the contract terms' and has '*persistently* demanded an unwarranted condition precedent to its required performance.'"  *Pami-Lemb I Inc., et al. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1014 n.75 (Del. Ch. 2004) (citation omitted) (emphasis added by *Pami-Lemb* court).

The letters Plaintiffs claim constitute a repudiation do nothing more than inform Plaintiffs of Defendants' interpretation of the contract, concluding that Defendants owe no duty of indemnification to Plaintiffs with respect to a January 2003 release of red mud.  *See* Plaintiffs' Ex. 115.  The United States Supreme Court addressed a similar factual scenario and held that an insurer's assertion that it would no longer make payments to a policy-holder injured in an accident on the grounds that it appeared to the insurer that the policy-holder was no longer disabled did not constitute a repudiation.  *New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 675-76 (1936).  Likewise, Defendants' letters do not constitute a repudiation for which Plaintiffs are entitled to end their ongoing obligations under the PSA.  And, regardless of the label Plaintiffs may seek to use, Plaintiffs are not entitled to equitable relief from their remaining obligations under the PSA.

---

[15] Moreover, as discussed more fully in Defendants' Opening Brief, full rescission is not available here because the parties cannot be returned to the status quo.  Defendants' Opening Brief at 27.  Plaintiffs do not contend otherwise because Plaintiff have entered into lease agreements related to the Property that prevent return to the status quo.

### E.   PLAINTIFFS' NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs lean on the phrase "additional damages" in paragraph 57 of their Second Amended Complaint to argue that their negligence claim relates to damages in an area "[w]ell away from the area related to contract performance."   Opp. Mem. at 32-33.   But a plain reading of paragraph 57 demonstrates that the "additional damages" they seek arose from Defendants' "actions in trying to remediate and correct the regraded red mud disposal area," and not from any other, independent actions by Defendants.   Second Am. Compl. ¶ 57.   Paragraph 19 of the Second Amended Complaint makes clear that the June 13, 2002 letter amendment to the PSA is the lone source of Defendants' obligation "to clean up and correct problems resulting from the release of red mud from the red mud disposal area."   Thus, any alleged damages attributable to negligent actions in remediating the red mud disposal area are inextricably related to the parties' contract, and, therefore, barred by the gist of the action doctrine.   *See* Def. SJ Mem. § III(E)(1); § II(B), *supra*.[16]

### III.   CONCLUSION

Plaintiffs cannot prevail on any of their claims in this litigation.   The gist of the action doctrine bars Plaintiffs' fraud and negligence claims in the Virgin Islands, while the clear and unambiguous meaning of the terms in the parties' "as is, where is" agreement bar Plaintiffs' breach of warranty claims.   Because no material factual disputes remain, this Court should award summary judgment on all counts.

---

[16]  To the extent that Plaintiffs now seek damages unrelated to the remediation work, Plaintiffs have not pled that Defendants breached any independent duty aside from their obligations under the PSA. A plaintiff must plead and prove the four basic elements of negligence: duty, breach, legal causation, and loss. *See, e.g., Washington v. Hovensa, L.L.C.*, 2008 WL 2697332 at *2 (D. V.I. July 3, 2008) (citations omitted).  Nor have Plaintiffs attempted to show that evidence will demonstrate that Defendants damaged the Property in breach of a non-contractual duty. Plaintiffs must do more at the summary judgment phase than make bold, unsubstantiated assertions. *See, e.g., Anderson*, 477 U.S. at 248-49 (citation omitted).

Respectfully submitted,

November 20, 2009

**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, LLC**


By:_____/s/ Simone R.D. Francis
Simone R.D. Francis
V. I. Bar Number 537
The Tunick Building
1336 Beltjen Road, Suite 201
St. Thomas, Virgin Islands 00802
Telephone: (340) 714-1235
Facsimile: (340) 714-1245

Charles A. Gall
HUNTON & WILLIAMS LLP
Fountain Place
1445 Ross Avenue
Suite 3700
Dallas, Texas  75202-2799
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

Cassandra C. Collins
Dan J. Jordanger
William H. Wright, Jr.
HUNTON & WILLIAMS LLP
Riverfront Plaza-East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on the 20th of November, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Joel H. Holt, Esq.
LAW OFFICES OF JOEL H. HOLT
2132 Company Street, Suite 2
Christiansted, St. Croix VI  00820
Carl Hartmann III
St. Croix, Virgin Islands

Carl Hartman, III, Esq.
5000 Estate Coakley Bay, L-6
Christiansted
St. Croix, Virgin Islands 00820

Paul Ruskin
P.O. Box 25647
Christiansted
St. Croix, Virgin Islands 00824

Kim Japinga, Esq.
5000 Estate Coakley Bay, L-6
Christiansted
St. Croix, Virgin Islands 00820


_____/s/ Simone R.D. Francis_____