IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

ST. CROIX RENAISSANCE GROUP,    :    CIVIL ACTION
LLLP, et al.                         :
                                    :
       v.                           :
                                    :
ST. CROIX ALUMINA, LLC, et al.  :    NO. 04-67

MEMORANDUM

Bartle, C.J.                                         November 19, 2010

        Plaintiffs St. Croix Renaissance Group, LLLP, Brownfield Recovery Corporation, and Energy Answers Corporation of Puerto Rico have sued defendants St. Croix Alumina, LLC and Alcoa World Alumina, LLC in connection with plaintiffs' purchase of an industrial property in St. Croix.  On December 23, 2009, we granted in part and denied in part the motion of defendants for summary judgment.  Presently, there remain claims for breach of contract for failure to disclose multiple red mud discharge events and failure to alert plaintiffs to hazardous materials on the property.  There are also pending claims for fraud in the inducement for failing to disclose various environmental violations related to red mud releases into the sea.

        Now before the court is defendants' <u>Daubert</u> motion seeking to exclude the expert testimony of Peter Ross.  In making their objection to Ross as an expert witness, defendants maintain

that Ross will be called to testify as to the need to encapsulate a particular area of the alumina refinery to alleviate environmental concerns and the amount of red mud that migrated to another area of the property prior to its 2002 sale to plaintiffs.  As plaintiffs correctly point out, defendants misconceive the nature of his expected testimony.  Ross's testimony will be limited to the narrow issues of the mechanics and cost of two projects:  (1) encapsulating "Area B" on the alumina refinery property; and (2) excavating and moving red mud from two areas of the property to a third.  The underlying need for such structural interventions and the historical record of environmental conditions before the sale is outside the scope of Ross's testimony.

As our Court of Appeals has repeatedly noted, Rule 702 embodies three requirements:  qualification, reliability, and fit.  Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).  An expert is qualified if he "possess[es] specialized expertise." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).  This does not necessarily require formal credentials, as "a broad range of knowledge, skills, and training qualify an expert," and may include informal qualifications such as real-world experience.  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994); Langbord v. U.S. Dept. of the Treasury, No. 06-5315, 2009 WL 1312576, at *2 (E.D. Pa. May 7, 2009) (citing Fed. R. Evid. 702 advisory committee's note).  The qualification standard is a liberal one, and an expert may be

sufficiently qualified under Rule 702 even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."  Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996).

To determine reliability, we focus not on the expert's conclusion but rather on whether that conclusion is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation."  Schneider, 320 F.3d at 404 (internal quotation marks omitted).  Our analysis is flexible and may include such factors as:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Pineda, 520 F.3d at 247-48.

Expert testimony must also "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Thus, to "fit," such evidence must bear some relation to the "particular disputed factual issues in the case." United States v. Downing, 753 F.2d 1224, 1237 (3d Cir. 1985). Accordingly, this factor has been described as one of relevance.

Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591 (1993); Paoli, 35 F.3d at 745 & n.13.

Ross is qualified to opine on these potential construction projects at the alumina refinery, that is, the method and cost of encapsulating "Area B" and the method and cost of excavating red mud.  Again, he is not opining on the need for remediation or on defendants' responsibility for any remediation.  Ross has had twenty-five years of experience in the construction and real estate development industries.  His practical experience renders him qualified to perform the analysis needed to formulate opinions as to the preferred method of carrying out the construction tasks in issue.  His lack of geotechnical or environmental qualifications in no way affects his ability to render valid opinions on the limited subjects of his testimony.

Ross's testimony is also reliable under the Pineda standard.  His methodology is clear and based on his years of experience in the field.  It appears that he uses a methodology common in construction projects for making his assessments.  While defendants may believe that Ross's methods are not the best means to evaluate the appropriateness of these projects, such a concern goes to the weight of Ross's testimony, not its admissibility.  Defendants are free to cross-examine Ross vigorously when he testifies.

Finally, defendants contend that the opinions of Ross do not fit the issues in the case.  Defendants maintain that there is no environmental violation in these areas relevant to

Ross's testimony and no corresponding need for any remediation. However, there still exist genuine issues of material fact as to those questions. Plaintiffs will have an opportunity at trial to prove that environmental violations exist such that certain remediation is necessary. If plaintiffs are able to prove that defendants are liable for breaches of the purchase contract based on environmental violations in these areas of the refinery, the method and calculation of the costs to encapsulate "Area B" and the method and calculation of costs to excavate the red mud will be at issue and will certainly fit the case.

   Accordingly, we will deny defendants' motion to exclude the testimony of Peter Ross.